**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| HOSEY COLBERT, and SHANTITA COLBERT, | * * * | CIVIL DOCKET NUMBER: 3:13-CV-00028 |
| Plaintiffs, | * | |
| | * | |
| VERSUS | * | |
| | * | |
| CITY OF BATON ROUGE/PARISH | * | SECT: |
| OF EAST BATON ROUGE; SHERIFF | * | |
| SID J. GAUTREAUX, III, SHERIFF | * | JUDGE: |
| OF EAST BATON ROUGE PARISH; | * | |
| LIEUTENANT COLONEL DENNIS | * | |
| GRIMES, WARDEN OF EAST | * | MAG: |
| BATON ROUGE PARISH PRISON; | * | |
| PRISON MEDICAL SERVICES; | * | |
| RINTHA SIMPSON, INTERIM | * | |
| DIRECTOR, PRISON MEDICAL | * | |
| SERVICES; J. DOES #1-99; | * | |
| COLUMBIA CASUALTY COMPANY, | * | |
| CNA INSURANCE COMPANY. | * | |
| | * | |
| Defendants. | * | |
| ****************************** | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |

**COMPLAINT**

Hosey and Shantita Colbert file this Complaint based on the Defendants' failure to protect from harm and deliberate indifference to the serious medical needs of their seventeen (17) year old son, Tyrin Colbert.  Tyrin Colbert (hereinafter, "Tyrin") died as a result of both explicit and *de facto* policies and practices by the Defendants that operate the East Baton Rouge Parish Prison (hereinafter, "EBRPP") in an unconstitutionally violent and dangerous manner.  In addition, the Defendants are deliberately indifferent to the serious medical and mental health

1

needs of all prisoners in the EBRPP, including individually towards Tyrin, which resulted in Tyrin's death. The Defendants' explicit and *de facto* policies and practices and deliberate indifference violated Tyrin's rights to due process and to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the U.S. Constitution.

In support of these claims, Hosey and Shantita Colbert show as follows:

## I.   JURISDICTION

1.

This action is brought pursuant to 42 U.S.C. § 1983, pursuant to the Eighth and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343, and the aforementioned statutory and constitutional provisions. In addition, Plaintiffs invoke supplemental jurisdiction over claims under state constitutional and statutory law pursuant to 28 U.S.C. §1367.

## II.   PARTIES

2.

**HOSEY** and **SHANTITA COLBERT** (hereinafter, "Plaintiffs") are persons of full age of majority and residents of Louisiana domiciled in Baton Rouge, Louisiana. Plaintiffs are the parents of Tyrin Colbert (deceased), who was a minor child who was never married and has no children.

Named Defendants herein are:

3.

**CITY OF BATON ROUGE/PARISH OF EAST BATON ROUGE** (hereinafter, "CITY-PARISH") is a political entity capable of suing and being sued. The CITY-PARISH is the entity responsible for funding operations and maintenance, including necessary improvements, repairs, routine daily maintenance, purchase of equipment, supplies, and

materials needed for such purposes, and for utility services, of the EBRPP.  In addition, the CITY-PARISH is responsible for the food, clothing, medical treatment, and related expenses for prisoners housed in the EBRPP, including mental health services.

4.

**SHERIFF SID J. GAUTREAUX, III** (hereinafter, "GAUTREAUX") a person of full age of majority and a resident of Louisiana, in his individual and official capacity.  At all times described herein, GAUTREAUX was the Sheriff of the East Baton Rouge Parish Sheriff's Office and was responsible for the hiring, training, supervision, discipline and control of appropriate staff to maintain the care, custody, and control of prisoners in the custody of the East Baton Rouge Parish Sheriff's Office.  He was responsible for all staffing levels of the EBRPP.  He was also responsible for the supervision, administration, policies, practices, customs, and operations of EBRPP.  GAUTREAUX was and is a final policy maker who at times delegated policy making authority to other Defendants named in this lawsuit.   At all pertinent times, GAUTREAUX was acting under color of law.  He is liable both directly for the unconstitutional actions and vicariously for the state law actions complained of herein.

5.

**LIEUTENANT COLONEL DENNIS GRIMES** (hereinafter, "GRIMES") a person of the full age of majority and a resident of Louisiana, in his individual and official capacity as warden of the EBRPP.  At all times described herein, GRIMES was the Warden of the EBRPP, and as such was responsible for supervision, administration, policies, practices, customs, operations, training of staff, and operation of the EBRPP.  GRIMES was and is a final policy maker who at times delegated policy making authority to other Defendants named in this lawsuit. At all pertinent times, GRIMES was acting under color of law.  He is liable both directly for the unconstitutional actions and vicariously for the state law actions complained of herein.

3

6.

**PRISON MEDICAL SERVICES**, a Department of Emergency Medical Services, a Division of the City of Baton Rouge/Parish of East Baton Rouge (hereinafter, "PMS"), was at all times described herein the entity with which the East Baton Rouge Sheriff's Office and the CITY-PARISH contracted to provide medical and mental health services to prisoners at EBRPP. PMS was responsible for the provision of all staffing, training, policies and procedures for medical and mental health personnel at EBRPP.

7.

**RINTHA SIMPSON** (hereinafter SIMPSON), a person of the full age of majority and a resident of Louisiana, in her individual and official capacity as the interim director of PMS.  At all times described herein, SIMPSON was the interim director of PMS, and as such was responsible for supervision, administration, policies, practices, customs, operations, training of staff, and operation of the infirmary and provision of health care at the EBRPP in execution of the contract for services made with the East Baton Rouge Sheriff's Office and CITY-PARISH. SIMPSON was and is a final policy maker who at times delegated policy making authority to other Defendants named in this lawsuit.   SIMPSON is liable both directly for the unconstitutional actions and vicariously for the state law actions complained of herein.

8.

**J. DOES #1-49** were at all relevant times Louisiana registered nurses or other medical staff and adult residents of Louisiana who were acting under color of state law and were employees or agents of Defendants SIMPSON and PMS.  J. DOES #1-49 are liable both directly for the unconstitutional actions and vicariously for the state law actions complained of herein. Plaintiffs are unaware of the true names and capacities of these Defendants and therefore sues those persons by fictitious names in their individual capacity.   Plaintiffs will amend this

Complaint to allege their true names and capacities when ascertained and intends to seek immediate discovery from the Defendants to determine the identity of J. DOES #1-49.

9.

**J. DOES #50-99** were at all relevant times adult residents of Louisiana who were acting under color of state law and were employees or agents of the Defendants Sheriff GAUTREAUX and Warden GRIMES.  J. DOES #50-99 are liable both directly for the unconstitutional actions and vicariously for the state law actions complained of herein. Plaintiffs are unaware of the true names and capacities of these Defendants and therefore sues those persons by fictitious names in their individual capacity.  Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained and intends to seek immediate discovery from the Defendants to determine the identity of J. DOES #50-99.

10.

**COLUMBIA CASUALTY COMPANY, CNA INSURANCE COMPANY** is a domestic or foreign insurance corporation authorized to do and doing business in the State of Louisiana, which at all times mentioned herein provided Defendant Sheriff GAUTREAUX and the East Baton Rouge Sheriff's Office with a policy of liability insurance for the acts complained of herein.

### III.   FACTUAL ALLEGATIONS

11.

On or about November 4, 2015, Tyrin was arrested at his school based on a warrant stemming from an incident alleged to have happened almost 4 months earlier, in July of 2015. No formal charges were ever brought against him by the State of Louisiana.

12.

Upon his booking into EBRPP, Tyrin was 17 years old.  Intake documents indicate that he was 5' 11'' tall and weighed 129 pounds.  With a Body Mass Index (BMI) of 18, Tyrin was in the fourth (4th) percentile in the BMI-for-age for boys aged 17 years and 8 months old and considered underweight by the Centers for Disease Control and Prevention.

13.

Intake documents confirmed no mental health history of any kind.

14.

The conditions of confinement in EBRPP shock the conscience.  EBRPP is violent, racist, drug-infested, and in parts, filthy.  Exposure to routine violence in EBRPP stems from Defendant GAUTREAUX's deputies physically assaulting inmates as well as failing to monitor prisoner living units to insure that prisoners are safe from other prisoners.  Medical care is non-existent for some and although Defendant PMS staff (J. DOES #1-49 and others named in this Complaint) had a number of contacts with Tyrin, the medical and mental health care provided to him was deliberately indifferent to his serious medical and mental health care needs.

15.

EBRPP leadership, including Defendant Grimes, publicly admit that EBRPP's physical facility is run down, with cell doors that do not open or shut due to rust, a layout that makes it difficult to monitor prisoners, and is so routinely overpopulated that EBRPP must send hundreds of prisoners to other parishes.  Whether by policy or custom, EBRPP guards physically assault prisoners, fail to document prisoner movement, and fail to conduct regular monitoring of prisoner living areas to insure inmates are where they are supposed to be and safe from harm. The conditions and mistreatment of incarcerated individuals in EBRPP created severe mental health and physical safety issues for Tyrin.

16.

Within a week of being in EBRPP, on November 10, 2015, Tyrin's file indicates that "per security, inmate reports feeling suicidal."

17.

On November 13, 2015, Tyrin reported hearing voices and having hallucinations.  He told J. DOE of PMS that "he needs help."  That same day, however, PMS psychiatrist Dr. Robert Blanche documented seeing Tyrin in his living unit and claims Tyrin "is not suicidal; not depressed, he was manipulating."

18.

On November 17, 2015, Dr. Blanche documented that Tyrin was "very anxious." Blanche reported that Tyrin had been moved to the "Juvenile line" and Tyrin reported that he "is not sleeping at all."  Tyrin told Blanche that he is not eating because "people be rushing me." Blanche noted in the "plan" section of the file the following medications: Haldol, Ativan, Benadryl, and Seroquel.

19.

On November 18, 2015, Tyrin was administered powerful drugs, *inter alia*, Ativan and Haldol.  Ativan is a drug used to treat anxiety.   Haldol is an antipsychotic drug used to treat psychotic disorders.

20.

A week later, on November 25, 2015, Tyrin met with PMS staff LCSW L. Burns and LMSW J. Whitney.  He reported being sexually assaulted by another prisoner.

21.

On December 6, 2015, Tyrin had his forearm broken by another prisoner in an attempt to pull Tyrin into the other prisoner's cell.  It would be 5 days before Tyrin was taken to the hospital for x-rays and treatment.

22.

In spite of suffering a broken arm and being prescribed and administered powerful drugs for his mental health condition, Tyrin was not transported to scheduled medical call outs on December 14 and 28, 2015, and January 4, 6, and 11, 2016.

23.

On January 13, 2016, Tyrin informed PMS staff person Rani Whitfield that he was "being bullied on J-Line."

24.

On January 23, 2016 J. Doe of PMS reported that Tyrin was brought to them during pill call.  The deputy said that Tyrin "expressed that he wanted to kill himself."  The PMS staff person asked Tyrin if he felt that way and Tyrin "stared at me" and said nothing.  Tyrin was stripped of his clothes, placed in a paper gown, and placed on lockdown.

25.

Days later, on January 27, 2016, Tyrin's scheduled appointment with a social worker was "rescheduled" because the mental health professional "was out of the office due to a death in the family."

26.

A few weeks later, on February 18, 2016, Tyrin was murdered by his cellmate.

27.

EBRPP security staff rarely monitor the living areas that house detainees, including the units that housed Tyrin.  Defects in physical design and manner of operation, including inadequate staffing, inadequate supervision techniques, and poor sightlines, create conditions of confinement where larger, stronger, and more violent prisoners are able to prey on smaller, weaker, and more docile prisoners.  These conditions produce frequent violence and a continuous pattern of constitutional deprivations for the prisoners detained in EBRPP, including Tyrin.

28.

EBRPP security staff placed Tyrin in a two person cell with another 17-year old male, Kermitious Thomas (hereinafter, "Mr. Thomas").

29.

Mr. Thomas has since been indicted for Tyrin's murder.

30.

On February 18, 2016, Mr. Thomas was in EBRPP since December 29, 2015 for breaking into an apartment.  At the time of that arrest, he had been out on bond for a mere 11 days.  On December 18, 2015, Mr. Thomas was arrested for carrying a handgun in a Gun Free Zone, resisting arrest, and illegal possession of a handgun by a juvenile.

31.

At the time of Tyrin's murder, EBRPP security officials knew or should have known that Mr. Thomas was a threat to Tyrin.  In spite of the obvious risk to Tyrin's safety, EBRPP security staff placed Tyrin in a small cell with Mr. Thomas and failed to monitor the cell and the unit as a whole in order to protect Tyrin.

32.

Other detainees on the unit with Tyrin and Mr. Thomas reported that the two were fighting and yelling, and Tyrin was heard yelling "I'm sorry" and "I give up."  In spite of the loud and obvious fight, no EBRPP security staff ever intervened to protect Tyrin.

33.

When EBRPP staff finally checked on Tyrin, he was found unresponsive, face down, with a blanket around his neck at 5:30 p.m.  Tyrin was transported to the hospital in critical condition and died the next day.

34.

The misclassification of detainees, including Tyrin and Mr. Thomas, the failure of EBRPP security staff to monitor detainee living areas, and the failure EBRPP security staff to intervene timely to protect prisoners from assaults are the result of explicit policies to detain prisoners in a dilapidated and understaffed facility and *de facto* policies and practices that leave prisoners unmonitored and unprotected.  Both the explicit and *de facto* policies and practices were developed by or so extended and pervasive that Defendants GAUTREAUX and GRIMES should have known of them.

35.

J. DOES #50-99, as the result of *de facto* policies and practices permitted by Defendants GAUTREAUX and GRIMES, falsely document that EBRPP staff make regular monitoring rounds to supervise prisoners.

36.

Media reports subsequent to Tyrin's death quote health care professionals noting a "significant decline in the quality of care . . . over the past six or seven years," critical health conditions at the prison, and chronic understaffing.

37.

A recent independent evaluation of the system called the health care provided to prisoners at EBRPP "episodic and inconsistent."

38.

Defendants CITY-PARISH, GAUTREAUX, GRIMES, PMS and RINTHA SIMPSON failed to provide Tyrin sufficient access to qualified medical and mental health care.

39.

Defendants CITY-PARISH, GAUTREAUX, GRIMES, PMS and RINTHA SIMPSON failed to adequately staff and train employees responsible for providing constitutionally adequate medical and mental health care at EBRPP.  As the result of *de facto* policies and practices permitted by CITY-PARISH, GAUTREAUX, GRIMES, PMS and RINTHA SIMPSON, EBRPP staff are not trained and/or supervised to address prisoners' serious medical and mental health care needs, including those exhibited by Tyrin, resulting in deliberate indifference to prisoners' serious medical and mental health care needs.

40.

Defendants CITY-PARISH, GAUTREAUX, GRIMES, PMS and RINTHA SIMPSON's deliberate indifference to Tyrin's serious medical and mental health care needs began with his initial contact with Defendant PMS staff, and continued through his detention in EBRPP. Defendants named in this paragraph ultimately failed to provide necessary mental health care.

41.

Defendants CITY-PARISH failed to provide sufficient funding and oversight to all Defendants, resulting in unconstitutional conditions of confinement at the EBRPP.  The CITY-PARISH explicit policy of not sufficiently funding and overseeing the EBRPP caused defects in physical design and manner of operation, including inadequate staffing, inadequate supervision

techniques, and/or poor sightlines at the EBRPP, resulting in a continuous pattern of constitutional deprivations for all prisoners in EBRPP, including Tyrin.

42.

The failures of all Defendants are well known and consistent with a pattern and practice resulting in a decrepit physical plant, rampant violence, and deliberate indifference to the basic human needs, including medical and mental health care, of prisoners at EBRPP, including the following examples:

a.  Since 2013, at least four people died at the jail due to inadequate medical and mental health care;

b.  In February of 2015, Defendant GRIMES publically acknowledged that cell doors in the EBRPP do not open and shut due to rust, the layout of the prison makes it difficult to monitor prisoners, and overpopulation requires sending hundreds of prisoners to other parishes;

c.  In October of 2015, a Baton Rouge elected official complained of a study into the medical care at EBRPP, noting that "the council already knows about numerous problems" including understaffing, medical equipment shortages, and insufficient compensation for medical professionals;

d.  Also in October of 2015, Defendant GAUTREAUX was cited as requesting a new jail "for years" and that "officials long ago identified the problem: a dilapidated facility that is ill-equipped to hold . . . mentally ill who are booked";

e.  In February 2016, Defendant GAUTREAUX's spokesperson was reported to acknowledge that Tyrin's death proves that EBRPP is not safe for either EBRPP deputies or inmates.  Casey Rayborn Hicks noted that Defendant GAUTREAUX "proposed in a new facility  . . . a layout that has more visibility for deputies [and] surveillance cameras."

43.

At all times relevant to this complaint, Defendants acted under color of state law.

44.

At all times mentioned herein, J. DOES #50-99 were employed by Defendant GAUTREAUX and were acting in the course and scope of their employment with Defendant GAUTREAUX.

45.

All of the Defendants are liable to the plaintiffs for compensatory and punitive damages.

46.

All of the Defendants are liable jointly, severally, and in solido for the plaintiffs' injuries.

47.

The Defendants' actions were reckless, willful, wanton, and malicious, and constituted deliberate indifference to the rights of the plaintiffs. The Defendants' actions were the proximate cause of the injuries and death of Tyrin and the damages of the plaintiffs.

## IV.   CAUSES OF ACTION

**COUNT 1 – § 1983 Violation Based on the De Facto Policy, as Evidenced by Extended, Pervasive Misconduct by EBRPP Staff, That Create Conditions and Treatment That Constitutes Impermissible Punishment of Prisoners Under the Due Process Clause— Defendants GAUTREAUX, GRIMES, and CITY-PARISH (Official Capacities)**

48.

Plaintiffs repeat and re-allege each and every allegation of the complaint.

49.

The Defendants named in this Count, acting individually and together, under color of law, acted to violate Tyrin Colbert's right to be free from punishment without due process as protected by the Eighth and Fourteenth Amendments of the United States Constitution and 42 USC § 1983. They did so by exposing prisoners at the EBRPP, including Tyrin, to violent and dangerous conditions of confinement so extensive and pervasive that they reflect a *de facto* policy approved by the Defendants named in this Count.

50.

Such policies and practices include, but are not limited to, inadequate classification of detainees, defects in physical design and manner of operation, including inadequate staffing, inadequate supervision techniques, poor sightlines, and inadequate monitoring of prisoner living

areas that combined to result in frequent violence and a continuous pattern of constitutional deprivations for the prisoners in EBRPP, including Tyrin.

51.

In addition, Defendants **GAUTREAUX** and **GRIMES** knew or should have known that guards engage in illegal conduct including the falsifying of EBRPP monitoring logs.  Finally, all Defendants named in this count failed to provide appropriate medical and mental health services to EBRPP prisoners, including Tyrin, who was individually harmed by the *de facto* policies and practices described above.

**COUNT 2 –** *Monell* **Violation of § 1983 Based on Unconstitutional Conditions of Confinement That Constitutes Impermissible Punishment of Prisoners Under the Due Process Clause— Defendants GAUTREAUX, GRIMES, and CITY-PARISH (Official Capacities)**

52.

Plaintiffs repeat and re-allege each and every allegation of the complaint.

53.

The Defendants named in this Count, GAUTREAUX, GRIMES, and CITY-PARISH, acting individually and together, under color of law, acted to violate Tyrin Colbert's right to be free from cruel and unusual punishment without due process as protected by the Eighth and Fourteenth Amendments of the United States Constitution and 42 USC § 1983.  They did so by maintaining policies, patterns or practices that created unconstitutional conditions of confinement that deprived prisoners, including Tyrin, of basic human needs, including physical safety and mental health care.

54.

Tyrin Colbert and Plaintiffs were individually harmed by these policies, patterns, or practices because they resulted in the death of Tyrin, who was exposed to a continuous pattern of

deprivations which clearly violated the United States Constitution. The policies and practices adopted by the Defendants in this Count, whether explicit or *de facto* as evidenced by the extended and pervasive misconduct by EBRPP and CITY-PARISH officials, include but are not limited to: inadequate classification of prisoners, defects in physical design and manner of operation, including inadequate staffing, inadequate supervision techniques, poor sightlines, and inadequate monitoring of prisoner living areas that combined to result in frequent violence and a continuous pattern of constitutional deprivations for the prisoners in EBRPP, including Tyrin. In addition, Defendants GAUTREAUX and GRIMES knew or should have known that guards engage in illegal conduct including the falsifying of EBRPP monitoring logs. Finally, all Defendants named in this count failed to provide appropriate medical and mental health services to EBRPP prisoners, including Tyrin, who was individually harmed by the *de facto* policies and practices described above and resulted in Tyrin's death.

55.

At all pertinent times, the Defendants named in this Count, individually and collectively, acted unreasonably, recklessly, and with deliberate indifference and disregard for the safety, constitutional, and civil rights of Plaintiffs' son Tyrin Colbert by establishing the above-described policies, patterns, or practices. The above-named Defendants are therefore liable to Plaintiffs for the violation of constitutional rights described above pursuant to *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978).

**COUNT 3 — § 1983 Violation Based on Establishment of a System in which Prisoners with Serious Mental Health Issues are Denied Access to Appropriate Medical Care — Defendants GAUTREAUX, CITY-PARISH, PMS and SIMPSON (Official Capacities)**

56.

Plaintiffs repeat and re-allege each and every allegation of the complaint.

57.

The Defendants named in this Count, acting individually and together, under color of law, violated Tyrin Colbert's right to be free from cruel and unusual punishment and the right to due process as protected by the Eighth and Fourteenth Amendments of the United States Constitution and 42 USC § 1983. They did so by establishing and maintaining policies, patterns or practices that provide inadequate and insufficient services for medical and mental health care that they knew would result in the deprivation of such services for prisoners with serious medical conditions, namely, serious mental health conditions. Plaintiffs were individually harmed by the unconstitutionally inadequate and insufficient services for medical and mental health care because they resulted in the death of Tyrin, who was deprived of appropriate mental health and medical treatment after he was booked into EBRPP and continued until his murder by Mr. Thomas.

58.

At all pertinent times, the Defendants named in this Count, individually and collectively, acted unreasonably, recklessly, and with deliberate indifference and disregard for the safety, constitutional, and civil rights of Tyrin Colbert by failing to provide appropriate medical and mental health services.

**COUNT 4 – § 1983 Violation Based on Failure to Supervise Other Defendants to Ensure Prisoners Received Appropriate Care for Serious Medical Needs— Defendants GAUTREAUX and GRIMES (Individual and Official Capacities)**

59.

Plaintiffs repeat and re-allege each and every allegation of the complaint.

60.

Defendants GAUTREAUX and GRIMES, in their individual and official capacities, failed to supervise their subordinates JOHN DOES #50-99 to ensure that these subordinates did

16

not ignore prisoners' requests for medical and/or mental health treatment, fail to refer prisoners needing treatment to appropriate mental health professionals, and/or fail to properly monitor prisoners who are at risk of being sexually and physically abused by other prisoners.  Plaintiffs were directly harmed by this failure to supervise because it caused the death of their son Tyrin Colbert, who was at times left untreated and when treated received patently insufficient treatment for his serious medical and mental health needs.  At all pertinent times herein, Defendants GAUTREAUX and GRIMES were aware of the need to supervise their subordinates in order to ensure that they did not violate prisoners' rights.  These Defendants ignored that need and acted unreasonably and with deliberate indifference and disregard for the safety of Tyrin Colbert, as described above.

### COUNT 5 – § 1983 Violation Based on Deliberate Indifference to Tyrin Colbert's Constitutional Right to Appropriate Medical and Mental Health Care— Defendants JOHN DOES #1-99 (Individual and Official Capacities)

61.

Plaintiffs repeat and re-allege each and every allegation of the complaint.

62.

The above-named Defendants, acting individually and together, and under color of law, engaged in a course of conduct and conspired to engage in a course of conduct that acted to deprive Tyrin Colbert of his constitutional rights and did deprive him of said rights, specifically, the right to reasonable and adequate medical and mental health care, the right to be free from cruel and unusual punishment, and the right to be free from punishment without due process as protected by the Eighth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

63.

At all times pertinent herein, these Defendants, acting individually and collectively, acted unreasonably, recklessly, maliciously, and/or with deliberate indifference and disregard for the constitutional and civil rights and life and serious medical needs of the deceased, Tyrin Colbert.

64.

Furthermore, these Defendants, individually and collectively, had the duty and ability to intervene to prevent the violations of the rights of Tyrin, as described herein, but failed to do so.

65.

Finally, these Defendants acted as a final policy maker when they placed Tyrin in an inappropriate cell with Kermitious Thomas and deprived Tyrin of reasonable and adequate medical and mental health care, having been delegated the authority to do so by Sheriff GAUTREAUX and Warden GRIMES.

**COUNT 6 – *Monell* Violation of § 1983 Based on Establishment of Policies, Patterns or Practices pursuant to which Prisoners with Serious Mental Health Conditions are Denied Access to Appropriate Medical Care— Defendants GAUTREAUX, PMS, SIMPSON, and CITY-PARISH (Official Capacities)**

66.

Plaintiffs repeat and re-allege each and every allegation of the complaint.

67.

The Defendants named in this Count, acting individually and together, under color of law, violated Tyrin Colbert's right to be free from cruel and unusual punishment and the right to due process as protected by the Eighth and Fourteenth Amendments of the United States Constitution and 42 USC § 1983.  They did so by establishing and maintaining policies, patterns or practices that they knew would deprive prisoners with serious medical conditions, namely, serious mental health disorders, of treatment for those disorders.  There was furthermore a policy, pattern, and practice of staff members at EBRPP misclassifying prisoners and failing to

monitor prisoner living areas, putting individuals with mental illness including Tyrin at risk for their personal safety.

68.

Tyrin and Plaintiffs were individually harmed by these policies, patterns, or practices because they resulted in the death of Tyrin, who was deprived of appropriate mental health and medical treatment after he was booked into the EBRPP, and did not receive adequate treatment for his acute and severe emotional and mental distress following his booking into EBRPP and continued until Tyrin's murder by Mr. Thomas.

69.

At all pertinent times, the Defendants named in this Count, individually and collectively, acted unreasonably, recklessly, and with deliberate indifference and disregard for the safety, constitutional, and civil rights of Plaintiffs by establishing the above-described policies, patterns, or practices.

70.

The above-named Defendants are therefore liable to Plaintiffs for the violation of constitutional rights described above pursuant to *Monell v. Dept. of Soc. Servs*., 436 U.S. 658 (1978).

**COUNT 7 – § 1983 Violation Based on Specific Act or Omission Resulting in Unconstitutional Injury and Death— Defendants  J. DOES #1-99 (Individual Capacities)**

71.

Plaintiffs repeat and re-allege each and every allegation of the complaint.

72.

The Defendants named in this Count, J. DOES #1-99, acting individually and together, under color of law, acted to violate Tyrin Colbert's right to be free from cruel and unusual

punishment and the right to due process as protected by the Eighth and Fourteenth Amendments of the United States Constitution and 42 USC § 1983. They did so by misclassifying Tyrin, placing him in a small cell with a more violent and dangerous prisoner, failing to monitor the cell and living unit, falsifying official logbooks to indicate that they did monitor the cell and living unit, denying Tyrin access mental health care, and when providing medical care, doing so in an unconstitutional manner. These Defendants were acting upon the custom within the EBRPP of training and supervision, or the lack thereof, that authorizes sheriff's deputies and PMS staff to ignore the basic human needs of prisoners, including Tyrin, in EBRPP.

73.

Tyrin and Plaintiffs were individually harmed by these policies, patterns, or practices because they resulted in the death of Tyrin, who was deprived of his constitutional right to have his basic human needs met and to protection from harm from other prisoners. These deprivations resulted in his death, as described above.

74.

At all pertinent times, the Defendants named in this Count, individually and collectively, acted unreasonably, recklessly, and with deliberate indifference and disregard for the safety, constitutional, and civil rights of Plaintiffs by establishing the above-described policies, patterns, or practices.

**COUNT 8 – State Claim of Negligent and/or Intentional Conduct Resulting in Injury and Death— Defendants J. DOES #1-99 (Individual Capacities)**

75.

Plaintiffs repeat and re-allege each and every allegation of the complaint.

76.

The above-named Defendants, acting individually and together, and under color of law, engaged in a course of conduct and conspired to engage in a course of conduct that caused injury and harm to Tyrin Colbert and ultimately led to his death. At all times pertinent herein, these Defendants, individually and collectively, acted intentionally, maliciously, recklessly, and/or negligently towards the deceased, Tyrin Colbert. Furthermore, these Defendants, individually and collectively, had the duty and ability to intervene to prevent the tortious conduct of co-Defendants toward Tyrin, as described herein, but failed to do so. They are therefore liable to Plaintiffs, as described herein.

**COUNT 9 – State Claim of Respondeat Superior Liability of Sheriff GAUTREAUX**

77.

Plaintiffs repeat and re-allege each and every allegation of the complaint.

78.

At all relevant times, the individually named Defendants were acting in the course and scope of their employment with Defendants GAUTREAUX and East Baton Rouge Sheriff's Office. GAUTREAUX is therefore liable under the doctrine of *respondeat superior* for the actions and inactions of the individual Defendants, as described herein.

**COUNT 10 – Loss of Consortium ALL DEFENDANTS**

79.

Plaintiffs repeat and re-allege each and every allegation of the complaint.

80.

Defendants are liable to HOSEY and SHANTITA COLBERT, pursuant to La. C.C. 2315 (B) through 42 U.S.C. § 1983, for loss of service, society, support, love and affection arising out of the injuries occasioned by the acts and/or omissions of the Defendants herein.

**COUNT 11 – Wrongful Death Claim of HOSEY and SHANTITA COLBERT**

81.

Plaintiffs repeat and re-allege each and every allegation of the complaint.

82.

HOSEY and SHANTITA COLBERT, who are the surviving parents of TYRIN COLBERT, seek to recover for the damages which they sustained as a result of the death of their son due to the fault of Defendants in that they had a very close, loving supportive relationship with their son.

83.

The deceased left no surviving wife or children.

**COUNT 12 – Survival Action Claim of HOSEY AND SHANTITA COLBERT**

84.

Plaintiffs repeat and re-allege each and every allegation of the complaint.

85.

Plaintiffs seek relief under La. C.C. art 2315.2, for the pain and suffering occurring before and during Tyrin's death occasioned by the intentional and/or grossly negligent acts and/or omissions of the Defendants herein, and for all other relief as set forth herein.

**COUNT 13 – State Claim of Direct Action Against an Insurer,
Pursuant to LA R.S. § 22:1269**

86.

Plaintiffs repeat and re-allege each and every allegation of the complaint.

87.

At all applicable times, Defendant, COLUMBIA CASUALTY COMPANY, CNA INSURANCE COMPANY afforded liability insurance coverage to Defendants GAUTREAUX and/or other Defendants.   Accordingly, COLUMBIA CASUALTY COMPANY, CNA

INSURANCE COMPANY is liable to the Plaintiffs for the intentional and/or negligent acts of the other Defendants.

### COUNT 14 – State Claim for Breach of Duty to Provide Medical Treatment (GAUTREAUX)

88.

Plaintiffs repeat and re-allege each and every allegation of the complaint.

89.

Under Louisiana law, GAUTREAUX, as Sheriff and the confining authority, has a legal duty to provide medical treatment for prisoners.

90.

GAUTREAUX failed to provide medical and mental health treatment within EBRPP that was adequate and reasonable as required by law.

91.

Tyrin's death was a direct result of GAUTREAUX's failure to provide adequate and reasonable medical and mental health care.

### V.   INJURIES

As a result of the actions of the Defendants as described above, damages have been incurred as follows:

a.   Tyrin Colbert (deceased) suffered conscious and severe physical, mental, and emotional distress, pain and suffering prior to his death, and lost his life.

b.   Hosey and Shantita Colbert, who are the parents of Tyrin Colbert, suffered emotional pain and suffering, past, present, and future; loss of support; and have suffered the loss of love, affection, and companionship of their son, Tyrin Colbert, and have incurred funeral and burial expenses.

23

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that after due proceedings there be judgment rendered herein in Plaintiffs' favor and against all Defendants individually and jointly, as follows:

1.      Compensatory and punitive damages as prayed for herein;

2.      Reasonable attorneys' fees, as provided in 42 U.S.C. § 1988, 42 U.S.C. § 12205, and 29 U.S.C. § 794(b) and all costs of these proceedings and legal interest;

3.      Punitive damages pursuant to 42 U.S.C. § 1983 and any other applicable statute;

4.      Relief under La. C.C. arts. 2315 and 2321 from the intentional and/or negligent acts and/or omissions of the Defendants herein; and

5.      All other relief as appears just and proper to this Honorable Court.

{Signatures appear on following page.}

RESPECTFULLY SUBMITTED, this 12th day of January, 2017.

THE CLAIBORNE FIRM, P.C.

/s/ David J. Utter
DAVID J. UTTER
Louisiana Bar Number: 23236
*Lead Attorney for Plaintiff*

410 East Bay Street
Savannah, Georgia 31401
(912) 236-9559 Telephone
(912) 236-1884 Facsimile
david@claibornefirm.com

THE CLAIBORNE FIRM, P.C.

/s/ William R. Claiborne
WILLIAM R. CLAIBORNE
Georgia Bar Number: 126363
*Pro Hac Vice Motion Forthcoming*
*Attorney for Plaintiff*

410 East Bay Street
Savannah, Georgia 31401
(912) 236-9559 Telephone
(912) 236-1884 Facsimile
will@claibornefirm.com

/s/ John Adcock
JOHN ADCOCK
Louisiana Bar No. 30372
*Attorney for Plaintiff*

P.O. Box 750621
New Orleans, LA 70175
T:  (504) 233-3125
F:  (504) 308-1266
Email:  jnadcock@gmail.com

25